**John A. CHASE, Jr., and Myers W. Jay**

v.

**Frederick S. BURRELL and Marie Burrell.**

Supreme Judicial Court of Maine.

Argued March 9, 1984.

Decided April 13, 1984.

Libhart & Ferm, Wayne P. Libhart (orally), Ellsworth, for plaintiffs.

Walker & Ross, Frank B. Walker (orally), Ellsworth, for defendants.

Before McKUSICK, C.J., and VIOLETTE and GLASSMAN, JJ., and DUFRESNE, A.R.J.

GLASSMAN, Justice.

In this class action, the plaintiffs, owners of lots in a property subdivision known as Corea-by-the-Sea, appeal from a judgment of the Superior Court (Hancock County) refusing to grant a permanent injunction against Frederick and Marie Burrell. In their complaint, the plaintiffs sought an order enjoining the defendants from building a mobile home retirement village on their lot. The plaintiffs contend on appeal the Superior Court erroneously determined that a restrictive covenant in each of their

deeds could not be applied to prevent the defendants from using their land in the manner desired. We agree with the Superior Court and affirm the judgment below.

In the mid-1960s to 1970, subdivision plans were drawn up in which lots were laid out for sale on a portion of a peninsula in Gouldsboro, Maine. A number of individuals, including the plaintiffs, purchased lots in accordance with these subdivision plans. Each of the deeds to these subdivided (and numbered) lots contained a restrictive covenant, specifying that no mobile homes could be maintained on the property.[1] A number of these landowners testified that the restrictive covenants were an important factor in the decision to buy, and that they were assured orally that similar restrictions would be found in the deeds to all adjoining properties.

On April 18, 1975, the defendants, Frederick and Marie Burrell, purchased property in the southwest corner of the peninsula.[2] The Burrell property was not shown on the subdivision plans as a numbered lot for sale. More importantly, the deed to the Burrell lot contained no restrictive covenant against the maintenance of mobile homes.

In 1977, Mr. Burrell submitted a subdivision plan to the Gouldsboro Planning Board to build on his property a community of mobile homes for the elderly. Burrell's plan was approved, and construction began. The plaintiffs, seeking to halt continued construction, filed suit in Superior Court seeking an injunction. The plaintiffs conceded the deed to the defendants' lot contained no restrictive covenant, but argued the doctrine of "reciprocal negative easements" could be applied to prevent the defendants from intentionally taking advantage of their grantor's failure to include

an express restriction in the deed. The Superior Court, holding that the doctrine of "reciprocal negative easements" had no applicability to the facts before it, dismissed the plaintiffs' complaint. The court reasoned that a restriction could not be implied in the defendants' deed since the defendants' lot was never part of the general scheme of development for Corea-by-the-Sea. This appeal follows.

Many jurisdictions have adopted the doctrine of "reciprocal negative servitudes," or "implied equitable servitudes," in which a restrictive covenant will be implied in a silent deed when certain conditions are met. Although the criteria for application of the doctrine vary somewhat among different jurisdictions, generally, the doctrine is applied when: (1) a common owner subdivides property into a number of lots for sale; (2) the common owner has a "general scheme of development" for the property as a whole, in which the use of the property will be restricted; (3) the vast majority of subdivided lots contain restrictive covenants which reflect the general scheme; (4) the property against which application of an implied covenant is sought is part of the general scheme of development; and (5) the purchaser of the lot in question has notice, actual or constructive, of the restriction. *See Snow v. Van Dam*, 291 Mass. 477, 197 N.E. 224 (1935); *Sanborn v. McLean*, 233 Mich. 227, 206 N.W. 496 (1925); *see also Socec v. Maine Turnpike Authority*, 152 Me. 326, 129 A.2d 212 (1957). *See generally* 20 Am.Jur.2d *Covenants, Conditions, and Restrictions* §§ 173, 175, 299 (1965); 7 G. Thompson, *Thompson on Real Property* §§ 3163, 3171 (1962).

■■■ The Superior Court expressly found that the Burrell lot was not part of a

---

1. A typical restrictive covenant read:

   No house trailer, mobile home, or tent shall be placed or used thereon except that a Camper or Tent may be placed or used as a temporary housing facility for intermittent intervals from April through November and in no event shall any such camper or tent be a permanent housing facility.

   . . . .

   These restrictions shall be for the benefit of all other lots on the plans above referred to and every part thereof and shall run with the land.

2. The distance between the subdivision and the Burrell lot is unclear from the record.

common scheme of development for Corea-by-the-Sea. Unless this finding was clearly erroneous, we could not imply a restrictive covenant in the Burrell deed even were we to recognize the doctrine of "reciprocal negative servitudes." A finding of fact is clearly erroneous only when lacking any competent support in the record. *See Harmon v. Emerson*, 425 A.2d 978, 981 (Me. 1981); M.R.Civ.P. 52(a) (1983). The record below provides ample support for the Superior Court's finding. The subdivision plans for Corea-by-the-Sea were drawn up prior to 1971. The owner of the subdivided property did not obtain the Burrell lot until 1975. Moreover, a surveyor for the subdivision scheme for Corea-by-the-Sea was told to stay away from the Burrell property. Finally, the Burrell lot was not shown on any subdivision plan or scheme as a numbered lot for sale. Clearly, the record competently supports the Superior Court's finding.

The entry is:

Judgment affirmed.

All concurring.