3 W PARTNERS

v.

**Barbara BRIDGES et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs Nov. 14, 1994.
Decided Dec. 30, 1994.

Richard Engels, Stevens, Engels, Bishop & Sprague, Presque Isle, for plaintiff.

Francis E. Bemis, Hardings Law Offices, Presque Isle, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

ROBERTS, Justice.

3 W Partners brought a declaratory judgment action in Superior Court (Aroostook County, *Pierson,* J.) against Barbara Bridges, Frederick and Adena Wilson, and Richard Drummond (the Homeowners) seeking a declaration that lots 58–61 of the Green Hill subdivision in Presque Isle are free from any implied equitable servitude. The court granted the plaintiff's motion for a summary judgment. The Homeowners appeal, arguing that the court erred in concluding that restrictive covenants contained in the deeds

conveying their three lots did not establish an implied equitable servitude. We find no error in principle, but direct the entry of an appropriate judgment in favor of 3 W Partners.

In 1957 Samuel Fish filed a subdivision plan in the Southern Aroostook County Registry of Deeds containing sixty-seven lots.[1] Fish conveyed lots 33, 34, and 35 to the Homeowners' predecessors-in-title. Each deed contained a restrictive covenant limiting the property to residential use. The covenants provided in pertinent part as follows:

> This deed is given on the following conditions, to wit: ... that said Grantee, her [or his] heirs or assigns, shall not erect or maintain on said lot hereby conveyed any building except a private dwelling house and outbuildings thereon, and that any building erected therein [sic] shall at no time be used except for the purpose of a private dwelling....

Later deeds conveying those three lots incorporated the restriction either expressly or by reference.

In 1969 Fish sold the remaining sixty-four lots to another developer, Green Hill, Inc. The deed to Green Hill did not contain a restrictive covenant. The Homeowners concede that Green Hill altered any general scheme that might have existed by excluding lots 58–68 from residential use restrictions in subsequent deeds. Lots 58–68 are the only lots that have frontage on Green Hill Road. All of the other subdivided lots are located on University Street. In 1973 Green Hill amended the subdivision plan to remove lots 58–68 from the subdivision.

3 W originally acquired for commercial purposes only lots 62–68. Although its chain of title contained no residential use restriction, 3 W sought and obtained releases from the Homeowners of any potential implied equitable servitude. In 1988, 3 W acquired lots 58–61, the lots at issue in this case, hoping to expand its existing operation. 3 W again sought to obtain releases from the Homeowners. Because the parties were unable to agree on the price of the releases, 3

---

1. Fish assigned individual lot numbers as high as lot 68, but the subdivision contained no lot 49.

W brought this action for a declaratory judgment.

■ A summary judgment is appropriate pursuant to M.R.Civ.P. 56 only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Olsen v. Albert*, 523 A.2d 585, 588 (Me.1987) (citations omitted). When a party appeals from an order granting a summary judgment, we view the evidence in the light most favorable to the party against whom the judgment was entered, and review the trial court's decision for error of law. *Estate of Althenn v. Althenn*, 609 A.2d 711, 714 (Me.1992).

The elements of an implied equitable servitude are as follows:

(1) a common owner subdivides property into a number of lots for sale; (2) the common owner has a "general scheme of development" for the property as a whole, in which the use of the property will be restricted; (3) the vast majority of subdivided lots contain restrictive covenants which reflect the general scheme; (4) the property against which application of an implied covenant is sought is part of the general scheme of development; and (5) the purchaser of the lot in question has notice, actual or constructive, of the restriction.

*Chase v. Burrell*, 474 A.2d 180, 181 (Me. 1984). The common grantor may establish a general scheme by conveying the majority of his subdivided lots subject to a restriction that reflects the general scheme. *See Olsen v. Albert*, 523 A.2d at 588.

■ The uncontroverted facts in this case establish that only three of the sixty-seven lots were conveyed according to Samuel Fish's scheme. Thereafter, Green Hill changed the scheme expressly to exclude lots 58–68. Because only a small number of the subdivided lots were conveyed according to the original scheme, the court concluded that no implied equitable servitude exists as to lots 58–68. We agree with the trial court's determination. No general scheme exists that prevents 3 W Partners from engaging in commercial activity on lots 58–61. *See Olsen v. Albert*, 523 A.2d at 588 (restrictions in four of sixteen subdivided lots are insufficient to establish a common scheme).

Ordinarily the disposition "motion granted" is insufficient to confer a summary judgment to the moving party. *See Town of Freeport v. Ocean Farms of Maine, Inc.*, 600 A.2d 402, 403 (Me.1991). When, as here, the issue is clearly presented and neither party has questioned the sufficiency of the court's order, we determine that judicial economy is best served by affirming the court's clear intention. 4 M.R.S.A. § 57 (1989). Nevertheless, we must direct that the court enter an appropriate judgment on remand. *See Rossignol v. Raynes*, 650 A.2d 935, 937 (Me. 1994).

The entry is:

Order affirmed, and remanded with direction to enter a judgment for 3 W Partners declaring that lots 58–61 are not subject to an implied equitable servitude.

All concurring.