## ADAMATIC
### v.
## PROGRESSIVE BAKING CO., INC.

Supreme Judicial Court of Maine.

Argued Sept. 8, 1995.
Decided Dec. 7, 1995.

---

Stanley Greenberg (orally), Greenberg & Greenberg, Portland, for Plaintiff.

Paul Macri (orally), Berman & Simmons, P.A., Lewiston, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, and DANA, JJ.

ROBERTS, Justice.

Adamatic appeals from a judgment entered in the Superior Court (Androscoggin County, *Lipez, J.*) on a jury verdict finding that Adamatic breached its contract with Progressive Baking Company, Inc., for the sale of a baking machine, that Adamatic negligently misrepresented the machine it sold to Progressive, and that Progressive had not breached its contract with Adamatic. Adamatic contends that the court erred (1) by its instruction to the jury on Adamatic's contract damages, (2) by excluding a memorandum offered as evidence, and (3) by deciding as a matter of law that the contract did not contain provisions limiting the seller's warranties and limiting the buyer's remedies. Adamatic also contends that the damages awarded by the jury were excessive and based on

mistakes of law and fact. On Progressive's cross-appeal, we address only its contention that the court erred in denying its motion for a judgment as a matter of law. Because we agree with only one of Adamatic's contentions, we modify and affirm the judgment.

The jury could have found the following pertinent facts. In March 1987, Paul Pombriant, the owner of Progressive, contacted Adamatic, a New Jersey manufacturer of baking equipment, and spoke with Gary Schapiro, the district sales manager, about purchasing a machine for his bakery. Schapiro visited the bakery twice and discussed the bakery's product line with Pombriant and Progressive's baker, Eddie Morin. Morin told Schapiro of the types of dough Progressive used and the various weights of the breads and rolls it made, including five different types of rolls weighing one ounce. The one-ounce rolls comprised thirty percent of Progressive's product.

Based on the initial meetings, Schapiro prepared a proposal and cover letter describing various pieces of equipment, including the Adamatic Divider/Rounder Model ADR-2. The proposal stated:

> The following equipment specified will produce your bread and roll products in an 8 to 9 hour period of time. This is based on a production of approximately thirty (30) one hundred (100) pound bags of flour per day. . . .
>
> (1) ADAMATIC DIVIDER, ROUNDER MODEL ADR-2
>
> Rolls: divides and rounds rolls 1 to 5 oz at production rate of approximately 3,500 pieces per hour
>
> Bread: divides and rounds bread 5 to 20 oz at production rate of approximately 1,000 pieces per hour

Appearing at the top right corner of each page, the proposal stated that there were a total of 3 pages. At the signature line it stated: "Please sign and return pages 1 and 4; retain pages 2 and 5 for your files." There was also language stating, "The warranty of the seller is a limited warranty and appears in paragraph 10 of the Terms and Conditions. This limited warranty is instead of all other Warranties including the warran-

ties of merchantability and fitness." Schapiro wrote the word "void" across the Terms and Conditions provisions located on the back of page 2 of the proposal. At the trial, it was disputed whether a separate terms and conditions page (Adamatic's exhibit 3) was ever a part of the contract.

In September 1987, Schapiro again visited Progressive. During the visit, Pombriant signed the proposal and agreed to pay the amended contract price of $83,876.50. Pombriant paid $20,000 on signing the contract and an additional $54,519.72 when the machine was installed in November 1987. Progressive discarded all of its old equipment when the ADR-2 was installed, and ordered additional components. The total balance due to Adamatic was $14,901.95.

The machine did not work properly and did not produce any product less than 1¾ ounces. Progressive made several calls to Adamatic to complain about problems with the machine. Adamatic sent a baker to Progressive to help adjust the machine, but he could not get the ADR-2 to produce one-ounce rolls. Pombriant called Adamatic and told their marketing representative that Adamatic should either fix the machine or take it back and return his money. Adamatic did not respond.

Progressive used the machine for five years even though the equipment continued to have problems. Progressive purchased an additional machine for $42,000 to make one-ounce rolls. In February 1993, Progressive went out of business and sold its equipment.

In August 1990, Adamatic brought an action in the District Court (Lewiston) to collect the $14,901.95 unpaid contract price. Progressive removed the case to the Superior Court and filed a multicount counterclaim alleging, *inter alia,* negligent misrepresentation and breach of contract. Adamatic's reply asserted affirmative defenses, including comparative negligence and that Progressive's claims for lost profits and consequential damages were barred by Adamatic's limited warranty.

Adamatic's action for the price and Progressive's claims of negligent misrepresentation and breach of warranty were submitted

to the jury. In a special verdict, the jury found (1) Progressive had not breached its contract, (2) Adamatic had breached its contract, and (3) Adamatic had negligently misrepresented the machine. The jury awarded Progressive $75,000 for Adamatic's breach of contract and $106,000 for Adamatic's negligent misrepresentation, which, because of Progressive's comparative negligence, was reduced to $95,000. Judgment was entered for Progressive on the negligent misrepresentation claim in the amount of $95,000. After Adamatic's motion for a new trial was denied, it filed this appeal.

## I.

■ Adamatic initially challenges the court's instruction that "the buyer of goods must pay at the contract rate for any goods accepted by the buyer unless excused from such payment by a breach of contract of the seller." This instruction added a gloss to 11 M.R.S.A. § 2–607(1) (1995), which states "the buyer must pay at the contract rate for any goods accepted." Adamatic asserts that the instruction erroneously allowed the jury to find that Progressive was excused from paying the balance due if it found that Adamatic had breached the contract. Adamatic concedes that pursuant to 11 M.R.S.A. § 2–717 a buyer may deduct damages resulting from the seller's breach of the contract from any part of the price still due pursuant to the contract. It argues, however, that no such setoff occurred in this case because of the erroneous instruction.

■ An error in a jury instruction or in a refusal to give a requested instruction is reversible error only if it results in prejudice. *Flynn Constr. Co. v. Poulin,* 570 A.2d 1200, 1202 (Me.1990). Jury instructions are reviewed in their entirety to determine if they are adequate, taking into consideration the total effect created by the instructions and the potential for jury misunderstanding. *State v. Weisbrode,* 653 A.2d 411, 417 (Me. 1995).

We conclude that the instruction was both erroneous and prejudicial. Section 2–717 permits a buyer to deduct all or any part of the damages resulting from a seller's breach of contract from the price still due under the

same contract. The section does not allow a buyer to be excused from payment. The jury was instructed that if it found that Adamatic had breached the contract, Progressive was excused from paying the balance due to Adamatic. Adamatic, however, was entitled to a recovery on its complaint to be offset by any damages awarded on the counterclaim. The jury was not instructed to make the setoff and we cannot assume in the absence of an appropriate instruction that the jury considered the unpaid contract price when calculating Progressive's damages. The undisputed evidence showed that Progressive failed to pay $14,901.95. That amount is due to Adamatic and should now be set off from Progressive's damages.

■ On Progressive's cross-appeal it complains that the court erred in denying its motion made at the close of Adamatic's case for judgment as a matter of law on Adamatic's action for the balance of the contract price. When Progressive proceeded with the presentation of its evidence, it waived any rights on the motion. *Davis v. Allen,* 255 A.2d 894, 896 (Me.1969). Progressive's motion made at the close of Adamatic's case is therefore not reviewable on appeal.

## II.

■ Adamatic contends that the court erred in excluding from evidence a business record allegedly relevant to the issue of breach of warranty and misrepresentation. The record is an internal memorandum from Adamatic's own files. It contains an alleged statement attributed to Pombriant that "he is very pleased with [Adamatic's] equipment and plans to purchase more in the future if he is treated fairly." The court excluded the memorandum because its source lacked trustworthiness and thus it could not meet the requirements necessary to come within the business records exception to the hearsay rule. M.R.Evid. 803(6). The court's determination was a finding of fact which we review for clear error. *Pongonis v. Pongonis,* 606 A.2d 1055, 1057–58 (Me.1992). Based on the suspicious origin of the memo and the fact that no other memos were produced, we

conclude that the court did not err in excluding it from evidence.

## III.

■ Adamatic next contends that it was prejudiced by the trial court's determination that the evidence was insufficient to support a finding that the contract between the parties included a separate document, Adamatic's exhibit 3, that limited the seller's warranties of merchantability and fitness and limited the buyer's remedies. We disagree. We must determine whether, considering the evidence and all reasonable inferences therefrom in the light most favorable to the losing party, a contrary finding could be sustained. *C.N. Brown Co. v. Gillen*, 569 A.2d 1206, 1213 (Me.1990). The record contains no evidence showing that the additional document was a part of the contract. The court therefore did not err in keeping it from the jury.

## IV.

Finally, Adamatic argues that the evidence of contract damages was insufficient and the award was excessive and based on mistakes of law. Because the judgment was entered on the negligent misrepresentation claim and not on the contract claim, these issues are moot. No other contentions of the parties merit discussion.

The entry is:

Judgment reduced to $80,098.05 and, as so modified, affirmed.

All concurring.