1997 ME 127

**Daniel THOMPSON, et al.**

v.

**Brian PENDLETON.**

Supreme Judicial Court of Maine.

Submitted on Briefs April 18, 1997.

Decided June 20, 1997.

Gordon Stein, Damariscotta, for plaintiffs.

Ervin Snyder, Wiscasset, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

DANA, Justice.

[¶ 1] Daniel and Arden Thompson appeal from the judgment entered in the Superior Court (Lincoln County, *Bradford, J.*) on a jury verdict finding the width of the Thompsons' right of way over Brian Pendleton's property is "unknown." The Thompsons contend the court (1) erred by ruling against them on the counts of their complaint seeking reformation of their predecessors' deed and a declaration that Pendleton's land is burdened by an equitable servitude consisting of a 50–foot right of way; (2) failed to instruct properly the jury regarding the interpretation of their predecessors' deed; and (3) erred by determining that the Thompsons' right of way did not include the right to install utilities. We affirm the judgment.

[¶ 2] In 1942 Elizabeth Norton owned over 100 acres of land in Wiscasset abutting Churchill Street to the east and Bradford Road to the south. There was a woods road bisecting the property running north from the Bradford Road. Sometime after 1959 Norton decided to sell the eastern portion of the property. According to Norton's son, who was at the time acting as her business confidant, she believed that providing a right of way over the woods road would make the land more attractive to the buyer because it would provide easier access to the rear portion of the property. In 1962 Norton conveyed the eastern half of the property to the Motts, making the following provision for a right of way:

> Together with a right of way to the said Grantees herein, their heirs and assigns, to use in common with others, the said woods road referred to herein and marking the western boundary of the property herein conveyed, the right to the use of said woods road to be used for no commercial purposes and only for the purposes of the grantees herein in going to and from their property abutting on said woods road.

[¶ 3] Sometime between 1960 and 1968, Norton, her son, and a surveyor conferred about the best way to optimize the value of Norton's remaining property. Between 1962 and 1968 Norton sold five to ten parcels of land from the property, some of which abutted the woods road. During the same period, the surveyor made a map of the land that was filed in the Lincoln County Registry of Deeds. The map labeled the woods road as a "Proposed Street, Way 50' wide" and depicted it as abutting six different parcels to the east and west, including the Motts' land.

[¶ 4] In 1968 the Thompsons purchased the Mott property. Their deed contained the same provision for a right of way as that provided in the Norton–Mott deed. Before purchasing the property, Daniel Thompson looked at the map filed at the registry.

[¶ 5] Between 1977 and 1985 the Thompsons sold off three parcels of their land, each of which abutted the woods road. The deeds conveyed to the purchasers a right of way "over the fifty (50) foot wide way leading northerly from Bradford Road for the purpose of passing and re-passing on foot or by vehicle over said way." The deeds also provided that the way could be used "for the conveyance of any and all utilities necessary

for the utilization of the land herein surveyed as a single family residence."

[¶ 6] In 1980 Norton sold to Brian Pendleton her remaining land including the woods road. The deed contained the following provision: "This conveyance is subject to the rights of property owners, whose land abuts any way shown on said Plan, to use the said way as a means of ingress and egress to and from their properties to Bradford Road."

[¶ 7] In 1994 the Thompsons filed a complaint against Pendleton seeking a declaratory judgment that they were entitled to use a right of way measuring 50 feet in width over the length of the woods road and an injunction prohibiting Pendleton from interfering with their use of the right of way within the 50–foot boundary. The Thompsons based their complaint on theories of reformation, deed interpretation, and the existence of an equitable servitude. They later added assertions that there was an implied easement consisting of a 50–foot right of way across Pendleton's property and that their right of way over the woods road included a right to install utilities.

[¶ 8] At the close of the Thompsons' evidence, the court ruled the right of way did not include a right to install utilities. The court also determined the evidence did not support a claim for reformation or an equitable servitude and therefore refused to instruct the jury on those issues. The court instructed the jury that it was to rely on the intent of Norton and the Motts in determining the width of the right of way over the woods road. The jury returned a verdict stating that the width of the right of way as of the time of the Norton–Mott conveyance was unknown. The court entered a judgment for Pendleton on each count of the Thompsons' complaint.

## I.

[¶ 9] The Thompsons contend the court erred by ruling against them on their claims for a reformation and for enforcement of an equitable servitude or an implied easement because, they argue, they presented sufficient evidence to take those claims to the jury. Pendleton contends there is no evi-

dence in the record supporting the essential elements of the Thompsons' claims and the court properly entered judgment in his favor on those counts.

[¶ 10] Both parties fail to recognize that the Thompsons are not entitled to a jury trial on their equitable claims. Me. Const. art. I, § 20. Whether a claim is equitable or legal depends on "the basic nature of the issue presented and the remedy sought by the plaintiff." *Avery v. Whatley,* 670 A.2d 922, 924 (Me.1996). *See also DesMarais v. Desjardins,* 664 A.2d 840, 844 (Me.1995); *Bowden v. Grindle,* 651 A.2d 347, 349–50 (Me.1994). The Thompsons' claim for reformation is an equitable claim that is properly tried to the court. *See Peterson v. Grover,* 20 Me. 363 (1841) (equity will reform deed influenced by mutual mistake). Similarly, the claims seeking the enforcement of an equitable servitude or an implied easement are also equitable claims that do not require submission to the jury. *See, e.g., Bucciarelli v. DeLisa,* 691 A.2d 446, 448 (Pa.1997) (treating claim for enforcement of an implied easement as equitable); *Hillary Corp. v. United States Cold Storage, Inc.,* 250 Neb. 397, 550 N.W.2d 889, 894 (1996) (treating action for a declaratory judgment that plaintiff possessed an implied easement as an equitable action); *DeWitt v. Cavender,* 878 P.2d 1077, 1080 (Okla. Ct.App.1994) (same). *See also McGill v. Wahl,* 839 P.2d 393, 396 (Alaska 1992) (no right to jury trial in action for declaration of existence of prescriptive easement, as opposed to action for damages); *Brite Metal Treating, Inc. v. Reserve Iron & Metal, Inc.,* 61 Ohio App.3d 206, 572 N.E.2d 703, 704 (1988) (no right to jury trial in easement dispute when plaintiff seeks specific performance of the easement, but right exists when party seeks damages); *Agnew v. Haskell,* 71 Or.App. 357, 692 P.2d 650, 651 (1984) (no right to jury trial when plaintiff seeks a declaratory judgment that public acquired easement by prescription or implied dedication).

[¶ 11] Here, the trial court determined the Thompsons had not presented sufficient evidence of mutual mistake to submit their claim for reformation to the jury and, therefore, entered a judgment in Pendleton's

favor.[1] The court also found insufficient evidence regarding the existence of an equitable servitude or an implied easement and refused to instruct the jury on those issues.[2] We will not vacate a trial court's determination that a party failed to carry that party's burden of proof unless the evidence compelled a contrary finding. *Agliato v. Norton*, 632 A.2d 144, 145 (Me.1993). Nothing in the record establishes the trial court was compelled to find the Thompsons were entitled to a reformation or the enforcement of an equitable servitude or an implied easement.

## II.

[¶ 12] The Thompsons contend the court erred by ruling, as a matter of law, their right of way does not include the right to install utilities. Their argument is without merit. "The scope of an interest in land conveyed by deed is determined solely from the language of the deed, if that language is unambiguous." *Rancourt v. Town of Glenburn*, 635 A.2d 964, 965 (Me.1993) (citation omitted). "If the deed specifies the particular purpose for which the easement or right of way is granted, then the grantee cannot use it for other purposes." *Ware v. Public Serv. Co. of N.H.*, 412 A.2d 84, 86 (Me.1980). The Norton–Mott deed provided a right of way for specific purposes: "[t]he right to the use of the said woods road to be used for no commercial purposes *and only for the purposes of grantees going to and from their property abutting said woods road.*" (Emphasis added). The deed specifies that the right of way is to be used for ingress and egress and does not include the right to install utilities.

## III.

[¶ 13] The Thompsons contend that the court erred by omitting a sentence of their proposed jury instructions stating that the terms of the Norton–Mott deed were ambiguous. We review jury instructions "in their entirety to determine if they are adequate, taking into consideration the total effect created by the instructions and the potential for jury misunderstanding." *Adamatic v. Progressive Baking Co.*, 667 A.2d 871, 874 (Me.1995)(citation omitted).

[¶ 14] The Thompsons' instructions provided:

> The portion of the Norton to Mott deed referring to a well defined woods road has already been determined by this court to be ambiguous. You are to determine what width the original parties meant the right-of-way over the woods road to be.

Contrary to the Thompsons' contention, the court's instruction adequately instructed the jury on the issue before it and the court did not err in omitting the first sentence of the proposed instruction.

The entry is:

Judgment affirmed.

---

1. "[A] party seeking to reform a deed assumes a heavy burden." *Jones v. Carrier*, 473 A.2d 867, 869 (Me.1984). The party must show that the grantor and grantee labored under a mutual mistake, "and must do so by convincing evidence." *Id.* (citations omitted).

2. The doctrine of implied equitable servitudes allows a restrictive covenant to be implied in a silent deed when the following conditions are met:

   (1) a common owner subdivides property into a number of lots for sale; (2) the common owner has a "general scheme of development" for the property as a whole, in which the use of the property will be restricted; (3) the vast majority of subdivided lots contain restrictive covenants which reflect the general scheme; (4) the property against which application of an implied covenant is sought is part of the general scheme of development; and (5) the purchaser of the lot in question has notice, actual or constructive, of the restriction.

   *Chase v. Burrell*, 474 A.2d 180, 181 (Me.1984) (citation omitted). An implied easement may be created when a common grantor severs real estate, conveying part of it and retaining the balance, "and the circumstances at the time of the conveyance denote the grantor's intent to subject the retained land (the servient estate) to an easement benefitting the conveyed land (the dominant estate)." *Frederick v. Consolidated Waste Servs., Inc.*, 573 A.2d 387, 389 (Me.1990) (citations omitted).