STATE OF MAINE

YORK, ss.

SUPERIOR COURT
DOCKET NO. CV-01-310

JAMES WALLACE,

        Plaintiff

DONALD L. GARBRECHT
LAW LIBRARY

NOV 19 2002

    v.                          **ORDER**

MICHAEL NORTON,

        Defendant

Before this court is Michael Norton (Defendant)'s Motion for Summary Judgment pursuant to M.R.Civ.P. 56(c). Because the Plaintiff has conceded that summary judgment is appropriate for Count I of his Complaint this court will only consider the motion regarding Count II. (Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. at 2.)

## FACTS

In 1992, the Plaintiff acquired from the Defendant title to property on Pickerel Pond in Limerick, Maine, that was adjacent to property owned by the Plaintiff. In that same year the Defendant built a garage on his property in which he began operating a small automotive repair business. The Defendant's source deed from the previous owner of his property contains no reference to any restrictive covenants or other restrictions. However, the chain of title for the Defendant's property reveals a restrictive covenant in the warranty deed of Robert S. Gordon to Charles E. Sanborn dated August 9, 1954 and recorded in the York County Registry of Deeds in Book 1266, page 573. The restriction stated in part:

Because it is intended that this land shall only be used for private recreational and camping purposes, and to afford this protection to other and adjoining cottage lot owners and campers, the following restrictions in the use of the abovementioned cottage lots [including the Plaintiff's and Defendant's lots], shall be imposed: There shall be no excavation of an unsightly nature, such as "gravel pits"' *nor erection of structures for public entertainment or other public commercializing on the lands.* (emphasis added).

As a result of the Defendant's commercialization of his property, the Plaintiff brought suit alleging that the Defendant had breached the restrictive covenant to which his property is subject, seeking damages and injunctive relief.

## DISCUSSION

The Law Court has noted that summary judgment is no longer an extreme remedy. Curtis v. Porter, 2001 ME 158, ¶ 7, 784 A.2d 18, 21. However, this court has to consider that "[w]hen facts or reasonable inferences are in dispute on a material point, summary judgment may not be entered." *Id.* ¶9. In addition, this court will view the evidence in a light most favorable to the Plaintiff, who is the non-moving party. *Id.* ¶6.

The Defendant argues that his deed and source deed to his property do not contain or refer to a restrictive covenant regarding commercial development. Even though a 1954 deed in the chain of title to his property does mention a restriction, the Defendant contends that pursuant to 33 M.R.S.A. § 201-A, he needed actual notice of a restriction in his deed in the form of a reference to the volume and page in the registry of deeds or registry of probate. This court finds the Defendant's argument unpersuasive in that 33 M.R.S.A. § 201-A deals with a situation where a deed has a clause stating that the property is "Subject to applicable restrictions, easements, and incumbrances" which is not the case here. *See* 1 CASPER F. COWAN, MAINE REAL ESTATE LAW AND PRACTICE § 331 (1990).

2

Moreover, a title search in 1992 conducted in accordance with the Maine Title Standards issued by the Maine State Bar Association would have revealed the abovementioned restrictive covenant. MAINE TITLE STANDARD NO. 201 (1983) (recommending that examiners/abstractors who lack notice of prior defects in the title of a warranty deed should search a period going back 40 years or more).

The doctrine of implied equitable servitudes seems more applicable to the present case. Regarding this doctrine, the Law Court has stated that a restrictive covenant can be implied in a silent deed if the following elements exist:

> (1) a common owner subdivides property into a number of lots for sale; (2) the common owner has a "general scheme of development" for the property as a whole, in which the use of the property will be restricted; (3) the vast majority of subdivided lots contain restrictive covenants which reflect the general scheme; (4) the property against which application of an implied covenant is sought is part of the general scheme of development; and (5) the purchaser of the lot in question has notice, actual or constructive, of the restriction.

Thompson v. Pendleton, 1997 ME 127, n.2, 697 A.2d 56, 59 n.2.

Hence, when this court looks at the statement of material facts in a light most favorable to the Plaintiff there is a possibility that he can substantiate his claim.

WHERFORE this court shall **GRANT** the Defendant's Motion for Summary Judgment on Count I, but **DENY** the Defendant's Motion for Summary Judgment on Count II.

Dated: November_15_, 2002

PLAINTIFF: Graydon Stevens, Esq.
KELLY REMMEL & ZIMMERMAN
PO Box 597
Portland Me 04112-0597

G. Arthur Brennan
Justice, Superior Court

DEFENDANT:
Edward Titcomb, Esq.
WATERHOUSE TITCOMB FLAHERTY & KNIGHT
PO Box 311
Sanford Me 04073-0311

3

STATE OF MAINE                                    SUPERIOR COURT
                                                    CIVIL ACTION
YORK, ss.                                      DOCKET NO. CV-01-310


JAMES WALLACE,

            Plaintiff


        v.                        JUDGMENT

                                          DONALD L. GARBRECHT
                                              LAW LIBRARY

MICHAEL NORTON,

            Defendant                          JAN 8 2004


In his complaint, Mr. Wallace seeks injunctive relief against his neighbor, Mr.

Norton, who, Mr. Wallace alleges, is using his property in violation of certain restrictive

covenants.[1] Following a jury waived trial conducted on November 4, 2003, judgment

will be entered in favor of Mr. Wallace.

        The parties filed a substantial set of "Stipulations" principally outlining the

chains of titles for the properties in question and the historic use of these and a series of

lots originally created by Bernard Libby in 1935. I adopt and incorporate these

"Stipulations" as findings of fact.

        In 1935, Bernard Libby recorded a plan in the York County Registry of Deeds

which created 66 lots on Pickerel Pond in Limerick, Maine. Mr. Libby conveyed these

lots to Robert Gordon in 1947. This conveyance contains a restrictive covenant[2]

---

[1]    The request for a judicial finding that Mr. Norton was in violation of certain town ordinances was
abandoned at trial.

[2]    "Because it is intended that this land shall only be used for private recreational and camping
purposes, and to afford this protection to other and adjoining cottage lot owners and campers, the
following restrictions in the use of the above-mentioned cottage lots shall be imposed; there shall be no
excavation of an unsightly nature, such as "gravel pits", nor erection of structures for public
entertainment or other public commercializing on the lands. There shall be no saw-mills erected.
Sewerage shall be disposed of so as not to pollute the water in Pickerel Pond. The land shall not be used
for a public dump."

prohibiting owners from using their property for "public commercializing" purposes. Of the 66 lots created by Libby, the deeds to 55 contain the restrictive covenant language, including the lots at issue in this case. Between the 1947 conveyance from Libby to Gordon and Mr. Norton's purchase of Lots #42 to 45 in 1991, there were two other conveyances, one in 1954 and one in 1958. Reference to these deeds reveals that the restrictive covenant language appears in the 1947 and 1954 deeds, but not in the 1958 or Mr. Norton's source deed in 1991.

This plan originally contemplated the lots would be used as seasonal residences. Presently, somewhere between 15 and 25 of these lots contain full-time residences and the others are used seasonally.

Mr. Norton bought Lots #42 through 45 in 1991. He sold Lots #42 and 43 to Mr. Wallace in 1992. At the time the parties were friendly. When Mr. Wallace purchased Lots #42 and 43 from Mr. Norton, there was a residential structure on the Norton lots, and the Wallace lots were vacant.

For a number of years before 1992, Mr. Norton operated a filling station/auto repair business elsewhere in Limerick. Beginning in 1992 Mr. Norton began construction of a large garage structure on his property. During the period of 1998 and 1999 Mr. Norton sold his business location and began moving his auto repair business to the Pickerel Pond location. This is now a full-time business.

From 1992 to present there have been a variety of town land-use issues concerning the Norton property, including enforcement actions against Mr. Norton's use of the property. These resulted in an Administrative Consent Agreement, which authorizes Mr. Norton to continue operation of the business with certain limitations.

Mr. Wallace complains that the peaceful enjoyment of his residential property is impaired by Mr. Norton's commercial use of his property in violation of the restrictive covenant language.

## Conclusions

Maine recognizes the doctrine of implied equitable servitudes. *Thompson v. Pendleton*, 697 A.2d 56 (Me. 1997). Here, Mr. Wallace has proven that: 1) a common owner, Mr. Libby, subdivided the lots in question, 2) Mr. Libby had a common plan or scheme for the property – a seasonal, residential lake-side development, 3) the great majority of lots contain the restrictive language – here 55 out of 66, 4) the lots in question were part of the scheme and, 5) Mr. Norton had at least constructive notice of the restrictive language through two deeds in his chain of title, even though his deed itself did not contain the restrictive language.

The fact that some number of the lots which were part of the original scheme are used for full-time rather than seasonal residential purposes does not change the essential character of the development. This is a change in the degree of use, not a change in the kind of use. Commercial use is a change of kind.

The fact that Mr. Norton has reached a consent agreement with the town is not a bar to Mr. Wallace seeking to enforce the restrictive covenant nor is *laches* a defense. Mr. Wallace has been a consistent critic of Mr. Norton's use and has requested relief from the town. When the town's actions proved unsatisfactory to him, Mr. Wallace began this action.

Finally, Mr. Wallace has established he is entitled to injunctive relief. He has prevailed on the merits of his claim. He will suffer irreparable injury as a result of the interference with the peaceful enjoyment of his property and the diminution of its value, the public interest is not adversely affected and, while Mr. Norton faces negative

consequences, the balance of harms rests with Mr. Wallace who is relying on the restrictive language, rather than Mr. Norton, who had at least constructive notice of the restriction, but acted in contravention thereof.

The entry will be as follows:

On Mr. Wallace's complaint, judgment granting injunctive relief for Mr. Wallace. Counsel may prepare an order suitable for filing at the registry. Further, Mr. Wallace is awarded costs.

The clerk may incorporate this order n the docket by reference.

Dated:       December *10*, 2003

G. Arthur Brennan
Justice, Superior Court

PLAINTIFF:
Graydon Stevens, Esq.
KELLY REMMEL AND ZIMMERMAN
PO Box 597
Portland Me 04112-0597

DEFENDANT:
Edward Titcomb, Esq.
WATERHOUSE TITCOMB FLAHERTY AND KNIGHT
PO Box 311
Sanford Me   04073-0311