STATE OF MAINE                    SUPERIOR COURT
KENNEBEC, SS.                     CIVIL ACTION
                                 DOCKET NO-RE-2019-57


GEOFFREY S. STIFF, and
CAROLYN B. STIFF,
        Plaintiffs

                    **CERTIFICATION OF FINAL JUDGMENT**
                         M.R.CIV.P.54(b)

        V.


STEPHEN C. JONES and
JODY C. JONES,
        Defendants


In a Decision and Order dated March 12, 2021, the court granted the Defendants' (the Joneses) Cross Motion for Partial Summary Judgment as to Count 1 of the Plaintiffs' (the Stiffs) complaint and denied the Plaintiffs' similar motion for summary judgment on that count. In Count 1, the Stiffs alleged that the Joneses had violated certain restrictions that applied to their property because it was part of a "common scheme of development." In its Decision and Order, the court concluded that there was no common scheme of development applicable to the Joneses' lot.

Thereafter, the Stiffs filed a Motion to Amend pursuant to M.R.Civ.P. 59(e) essentially asking the court to amend its Decision and Order to certify it as a final judgment in accordance with M.R.Civ.P. 54(b). The Joneses conditionally opposed the motion to amend on procedural grounds, namely, that a motion under Rule 54(b) should have been filed rather than a motion to amend under Rule 59(e). The court held an unrecorded telephone conference with counsel for the parties on April 16, 2021. The parties agree that the common scheme of development claim in Count 1 of the complaint is the

driving issue in this litigation and that the remaining claims in the complaint or the counterclaims are not closely interconnected to the common scheme of development issue and are likely to be resolved once that issue is finally determined. For example, the outstanding claims are a dispute over a common boundary line, a counterclaim for trespass and a counterclaim for nuisance, none of which have anything to do with the common scheme of development issue.

M.R.Civ.P. 54(b) provides:

> ... when more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim ... the court may direct the entry of a final judgment as to one or more but fewer than all of the claims ... only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

The Law Court has stated that "[a] partial final judgment should be entered pursuant to this rule only in limited circumstances because there is a strong public policy against piecemeal review of litigation." *Chase home Fin. LLC v. Higgins*, 2008 ME 96, ¶ 10, 953 A.2d 1131. *See generally* C. Harvey, **Maine Civil Practice** § 54:3 at 180-185 (3d ed. 2011).

The court finds that several relevant factors, as identified by the Law Court, support the certification of the partial summary judgment in this case as a final judgment. As noted above, the common scheme of development issue in Count 1 is independent of the remaining claims and counterclaims. It is highly unlikely that review will be mooted by future developments in the trial court. An immediate appeal will facilitate overall resolution of this litigation and, therefore, the work of the trial court. While the Law Court has acknowledged the common scheme of development doctrine, it has not expressly adopted it. In that sense, then, it may be said that the legal question

2

is close. An immediate appeal is economically beneficial to the parties. *Wells v. Fargo*, 2007 ME 116, ¶ 13 n.1, 930 A.2d at 1028.

Based on these considerations, the court expressly determines that there is no just reason for delay and expressly directs the entry of final judgment as to Count 1 of the complaint in favor of the Defendants.

The entry is:

Final judgment is entered in favor of the Defendants on Count 1 of the Plaintiffs' complaint pursuant M.R.Civ.P. 54(b).

The clerk is directed to incorporate this order into the docket of this civil case by notation reference in accordance with M.R.Civ.P. 79(a).

Dated: April 16, 2021

William R. Stokes
Justice, Superior Court

3

GEOFFREY S STIFF  - PLAINTIFF
1151 MARNEY COURT
HENRICO VA 23299
Attorney for: GEOFFREY S STIFF

LAW OFFICE OF THADDEUS V  DAY
440 WALNUT HILL ROAD
PO BOX 11
CUMBERLAND CENTER ME 04021

CAROLYN B STIFF  - PLAINTIFF
1151 MARNEY COURT
HENRICO VA 23299
Attorney for: CAROLYN B STIFF

LAW OFFICE OF THADDEUS V  DAY
440 WALNUT HILL ROAD
PO BOX 11
CUMBERLAND CENTER ME 04021


v.
STEPHEN C JONES  - DEFENDANT
918 TIRRILL FARMS
ST LOUIS MO 63124
Attorney for: STEPHEN C JONES
JOHN CUNNINGHAM  - RETAINED 10/08/2019
EATON PEABODY
167 PARK ROW
PO BOX 9
BRUNSWICK ME 04011-0009

Attorney for: STEPHEN C JONES
JUDY METCALF  - RETAINED
EATON PEABODY
167 PARK ROW
PO BOX 9
BRUNSWICK ME 04011-0009

JODY C JONES  - DEFENDANT
918 TIRRILL FARMS
ST LOUIS MO 63124
Attorney for: JODY C JONES
JOHN CUNNINGHAM  - RETAINED 10/08/2019
EATON PEABODY
167 PARK ROW
PO BOX 9
BRUNSWICK ME 04011-0009

Attorney for: JODY C JONES
JUDY METCALF  - RETAINED
EATON PEABODY
167 PARK ROW
PO BOX 9
BRUNSWICK ME 04011-0009

SUPERIOR COURT
KENNEBEC, ss.
Docket No   AUGSC-RE-2019-00057

DOCKET RECORD

STATE OF MAINE
KENNEBEC, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO-RE-2019-57

GEOFFREY S. STIFF, and
CAROLYN B. STIFF,
    Plaintiffs

**DECISION AND ORDER**

V.

STEPHEN C. JONES and
JODY C. JONES,
    Defendants

## INTRODUCTION

The Plaintiffs in this action, Geoffrey and Carolyn Stiff (the Stiffs), own the property at 324 Sandy Cove Road in Belgrade, Maine. Their next-door neighbors, the Defendants Stephen and Jody Jones, own the property at 326 Sandy Cove Road. In October 2019, the Stiffs filed a complaint against the Joneses alleging that they had violated "common" restrictions by building "a new garage structure . . . within 15 feet of its sideline," and by completing the structure "into a second one-family dwelling." *See Count 1*. The Stiffs also sought declaratory relief to have the court determine the common boundary line between their property and the Joneses' parcel. *See Count 2*.

In December 2019, the Joneses filed their answer, denying that they had violated any restrictions, and counterclaiming for a declaration as to the correct boundary line with the Stiffs (Count 1); for trespass (Count 2), and; for nuisance (Count 3).

On June 1, 2020, the Stiffs moved for partial summary judgment as to Count 1 only. Later in June, the Joneses filed their opposition to the motion

for partial summary judgment, and cross-moved for partial summary judgment in their favor as to Count 1 of the complaint. Oral argument was held on October 19, 2020, and the court took a view of the property on October 21, 2020.

The following factual summary is taken from the summary judgment record.

## FACTUAL BACKGROUND

In the background of this dispute is a man named Edmund Hill, who apparently owned over 200 acres of property in and around Sandy Cove Road back in the 1950's and 1960's. Many of the statements of material fact relating to how Mr. Hill subdivided his property are disputed by the Joneses. The following description of Hill's activities pertaining to the property he owned and divided into lots, however, is presented in order to place the positions of the Stiffs and Joneses in context.

It is alleged that Mr. Hill acquired over 200 acres of land in the area of Sandy Cove Road between 1952 and 1969. In 1961, Hill allegedly sold approximately 97 acres of his land to Parker Lakes Shores (PLS) and provided financing for the purchase through a purchase money mortgage. The Stiffs further allege that PLS sold approximately 29 house lots that are depicted on a 1962 Plan and approximately 29 lots shown on a 1964 Plan. The Joneses maintain that the 1962 and 1964 Plans are irrelevant to this litigation because the lots ultimately purchased by them and the Stiffs were never part of those plans.

The Stiffs contend that the vast majority of the deeds to the lots sold by PLS on the 1962 and 1964 Plans contained 12 restrictions. Restrictions 1 and 2, which are the ones relevant to this lawsuit, prohibited any building or structure from being within 15 feet of any sidelines and limited the buildings

2

on the premises to "a one-family dwelling with private garage and boathouse for private use only."

It is alleged that in 1967, PLS re-conveyed unsold house lots back to Mr. Hill. What appears to be undisputed is that Hill sold additional lots depicted on what has been referred to as the 1963 Plan. It is further undisputed that portions of the Stiff parcel and Jones parcel "encompass the approximate location of what would have been lots 68 and 69 on the 1963 Plan." The parties also agree that there were 12 house lots on the 1963 Plan. Based on a "composite" of the 1962, 1963 and 1964 Plans, marked as Exhibit A to the Motion for Partial Summary Judgment filed by the Stiffs, the parties do not dispute that 5 of the 12 house lots on the 1963 Plan had deeds containing all 12 restrictions, including restrictions 1 and 2 as to sideline setback and one-family dwellings; 5 of the 12 had no restrictions at all, and; 2 of the 12 restrictions had a side setback restriction only. As depicted on that composite, the Stiffs and Jones parcels (portions of which encompass lots 68 & 69 respectively) had deeds that originally contained all 12 restrictions, including restrictions 1 and 2 pertaining to setback and one-family dwellings.

In a deed dated September 27, 1995, the Joneses acquired their property at 326 Sandy Cove Road, a portion of which includes Lot 69 on the 1963 Plan. The deed states that it "is subject to the restrictions and limitations contained in a Warranty Deed to Gavin L. MacKnight dated August 16, 1969 . . . ." The MacKnight deed came from Edmund Hill and was subject to 12 "restrictions and limitations which are to be covenants running with the land." Restrictions 1 and 2 provide:

> (1)  No building or structure shall be erected within twenty-five feet (25') of any of the front lines of these premises, within fifteen feet (15') of any of the side lines of said premises, or

3

within twenty feet of any of the back lines of said premises. . . .

(2)   No building shall be constructed or erected on the premises other than a one-family dwelling with private garage and boathouse for private use only, said building to have a minimum floor area of four hundred eighty (480) square feet. All buildings constructed of wood or metal shall be either shingled, stained or painted with two coats of paint (no light colors).

In a Warranty Deed dated August 22, 2005, the Stiffs acquired their property at 324 Sandy Cove Road. *See Exhibit 11.* The conveyance to the Stiffs was also made "subject to restrictions, covenants and easements set out in a warranty deed dated August 16, 1969, and recorded in the Kennebec County Registry of Deeds, Book 1501, Page 877 . . . ."[1]

Sometime in 2007-2008, the Stiffs renovated or rebuilt the residence on their property and moved it closer to the side line they shared with the Joneses. At that time no survey had been done of the boundary line between the two properties. In 2017-2018, the Joneses began construction of a new building on their property. The building is a two-story structure with a garage and several rooms above it. The parties strongly dispute whether a kitchen was part of that construction project, but there appears to be no dispute that there are several bedrooms, a playroom, a room with a refrigerator and a covered porch. Numerous photographs of the building, including a photograph of the

---

[1] This appears to be a reference to the MacKnight deed of August 16, 1969, that is also referred to in the conveyance to the Joneses, although the page number of 877 in the deed to the Stiffs is different from the page number of 871 in the deed to the Joneses.

4

interior, are part of the summary judgment record.[2] As noted earlier, the court took a view of the exterior of the premises on October 21, 2020.

It is the construction of this new building by the Joneses that is at the heart of this lawsuit between the parties, and it ultimately led to both parties having surveys done of their properties, including the boundary line between them. As a result, a discrepancy was discovered in the two surveys commissioned by the parties as to where their side boundary line is actually located. That boundary dispute is not part of the court's summary judgment analysis, and will be resolved at a later point in this litigation.

What is pertinent to the cross-motions for partial summary judgment, however, is that the parties' competing surveys raised the issue that both of their structures – the residence moved by the Stiffs in 2007-2008, and the new building erected by the Joneses in 2017-1018 – were less than 15 feet from the side line boundary of their properties and, therefore, not in compliance with restriction 1. In particular, depending on which survey is relied upon, portions of the Stiffs' building were as close as 10 feet from the common boundary line, while portions of the Joneses' building were between 13 feet and 14.2 feet from the common boundary line.

## SUMMARY JUDGMENT STANDARD

"The function of a summary judgment is to permit a court, prior to trial, to determine whether there exists a triable issue of fact or whether the question[s] before the court [are] solely...of law." *Bouchard v. American Orthodontics*, 661 A.2d 1143, 44 (Me. 1995). Summary judgment is appropriate where there are no genuine issues of material fact and the moving

---

[2] One photograph, apparently taken by Mrs. Stiff, shows a room with a stove, microwave, sink, refrigerator and island. *See Exhibit 13 to Carolyn Stiff Affidavit.* It is the court's understanding that the cooking appliances are no longer there.

party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653. A "material fact" is one that can affect the outcome of the case, and a genuine issue exists when there is sufficient evidence for a fact finder to choose between competing versions of the facts. *Lougee Conservancy v. City-Mortgage, Inc.*, 2012 ME 103, ¶11, 48 A.3d 774.

## DISCUSSION

At oral argument in this matter held on October 19, 2020, counsel for the Stiffs acknowledged that the sole basis for their argument that they are entitled to enforce the 12 restrictions against the Joneses, including restrictions 1 and 2 at issue here, is pursuant to the doctrine or theory of a "common scheme of development." It has been said that the "common" or "general" scheme or plan of development was originated as a way of circumventing the limitations on creating servitude benefits in third parties. *Restatement (3d) of Property: Servitudes § 2.14, comment (b) – Historical Note*.

On several occasions, the Maine Law Court has "acknowledged, but never expressly adopted, the common scheme of development doctrine, also known as the doctrine of implied equitable servitudes or implied restrictive covenants." *Tisdale v. Buch*, 2013 ME 95, ¶ 13, 81 A.3d 377. *See also Thompson v. Pendleton*, 1997 ME 127, ¶ 11 n.2, 697 A.2d 56; *3W Partners v. Bridges*, 651 A.2d 387, 389 (Me. 1994); *Olson v. Albert*, 523 A.2d 585, 588 (Me. 1987) (per curiam); *Chase v. Burrell*, 474 A.2d 180, 181-82 (Me. 1984).[3] The Court has described the doctrine as applying when

---

[3] Although the Law Court may not have expressly adopted the doctrine, it appears that it may have applied it in an action for damages in *Leader v. LaFlamme*, 111 Me. 242, 2456-

6

(1)A common owner subdivides property into a number of lots for sale; (2) the common owner has a "general scheme of development" for the property as a whole, in which the use of the property will be restricted; (3) the vast majority of subdivided lots contain restrictive covenants which reflect the general scheme; (4) the property against which application of an implied covenant is sought is part of the general scheme of development; and (5) the purchaser of the lot in question has notice, actual or constructive, of the restriction.

*Chase*, 474 A.2d at 181.

The Court has further stated that a "common grantor may establish a general scheme by conveying the majority of his subdivided lots subject to a restriction that reflects the general scheme." *3 W Partners*, 651 A.2d at 389. It is a question of fact whether a lot is part of a general scheme of development. *Tisdale*, 2013 ME 95, ¶ 13 *citing Chase*, 474 A.2d at 181-82.

In this case, where both sides have claimed an entitlement to partial summary judgment on the issue of whether the Joneses' lot is part of a common scheme of development, two somewhat interrelated questions present themselves to the court. Who is the "common owner or grantor," and what are the subdivided lots alleged to comprise the common scheme of development?

The Stiffs take the position that the deeds in all three plans (1962, 1963 and 1964 Plans) constituted "one subdivision" consisting of 71 lots, as to which the deeds 60 of the lots contained the 12 restrictions. *See Plaintiffs' SOMF ¶¶ 20 and 33*. Specifically, the Stiffs have argued that "Edmund Hill and PLS worked together to create one subdivision of 71 lots on 3 related plans with consecutive lot numbers." *Id. at ¶ 33*. In essence, the Stiffs

---

46, 88 A. 859 (1913). *See generally*, Cowan, **Maine Real Estate Law and Practice**, § 321 at 274 (West 1990).

7

contend that "PLS and Hill were the common owners who created the large Sandy Cove subdivision." *Plaintiffs' Motion for Partial Summary Judgment at 8.*

The Joneses strongly dispute these assertions of fact. They contend that there is no admissible evidence that PLS and Hill "worked together" or that they were "common owners" of the property or that the house lot deeds in the 1962 and 1964 Plans have anything to do with the deeds in the 1963 Plan, which are, they maintain, the only deeds and plan relevant to this controversy. For their part, the Joneses argue that Edmund Hill was the only common owner/grantor of the deeds to the lots in the 1963 Plan.

It seems to the court that the initial question that needs to be addressed is whether, as a matter of law, it can be determined that PLS and Hill were the "common owners" as urged by the Stiffs and/or whether Hill alone was the common owner of the 12 lots from the 1963 Plan. In attempting to answer these questions, the court has found it helpful to consult some of the comments and illustrations from the *Restatement (3d) of Property: Servitudes, § 2.14.* Comment (g) makes the point that it is typical that the development of a tract of land into subdivisions occurs in phases over a period of time. "When a tract is developed in phases, with separate units or subdivisions, the imposition of servitudes in one phase should not give rise to the implication of reciprocal servitudes burdening the remaining units or subdivisions . . . ." Illustration 11 gives the following example:

> D developed a large tract of land into subdivisions A, B, and C. For each subdivision D filed a separate plat and declaration of covenants restricting use to detached single-family dwellings. Each declaration states that the burden of the covenants runs with the land for the benefit of all lots within the particular subdivision. The conclusion is justified that subdivisions A, B,

8

and C are not part of one general plan, but the lots included in each subdivision are part of separate general plans.

Admittedly, this illustration is not precisely on point with the case before the court, but it does suggest that granting the Stiffs' motion for partial summary judgment as to Count 1 of their Complaint would not be appropriate where there are disputed issues of material fact as to their claim that Edmund Hill and PLS "worked together" to create a single, large common scheme of development encompassing all 71 lots within the 1962, 1963 and 1964 Plans.

With respect to the motion for partial summary judgment filed by the Joneses, there does not appear to be any genuine issue of material fact that Edmund Hill was the common owner of the 12 house lots within the 1963 Plan. Only 5 of the original deeds to those 12 lots contained the 12 restrictions, including restrictions 1 and 2. Another 5 deeds had no restrictions at all, while 2 deeds only contained a restriction of a 15-foot side set back.

The Law Court has been consistent that in order to have a common scheme of development the "vast majority of subdivided lots [must] contain restrictive covenants which reflect the general scheme." *See Tisdale*, 2013 ME 95, ¶ 13 and cases cited therein. Five to 7 deeds out of 12 does not, in the court's view, constitute the "vast majority." The court concludes that the Joneses are entitled to summary judgment as to Count 1 of the Stiffs' Complaint on the basis that there is no common scheme of development applicable to their lot.

9

## CONCLUSION

The entry is:

Plaintiffs' Motion for Partial Summary Judgment as to Count 1 of their Complaint is DENIED.

Defendants' Motion for Partial Summary Judgment as to Count 1 of the Complaint is GRANTED.

The Clerk is directed to incorporate this Order into the docket of this case by notation reference in accordance with M.R.Civ.P. 79(a).

Dated: March 12, 2021

Entered on the docket 3|12|2021

William R. Stokes
Justice, Superior Court

10

GEOFFREY S STIFF  - PLAINTIFF
1151 MARNEY COURT
HENRICO VA 23299
Attorney for: GEOFFREY S STIFF

LAW OFFICE OF THADDEUS V  DAY
440 WALNUT HILL ROAD
PO BOX 11
CUMBERLAND CENTER ME 04021

CAROLYN B STIFF  - PLAINTIFF
1151 MARNEY COURT
HENRICO VA 23299
Attorney for: CAROLYN B STIFF

LAW OFFICE OF THADDEUS V  DAY
440 WALNUT HILL ROAD
PO BOX 11
CUMBERLAND CENTER ME 04021


v.
STEPHEN C JONES  - DEFENDANT
918 TIRRILL FARMS
ST LOUIS MO 63124
Attorney for: STEPHEN C JONES
JOHN CUNNINGHAM  - RETAINED 10/08/2019
EATON PEABODY
167 PARK ROW
PO BOX 9
BRUNSWICK ME 04011-0009

Attorney for: STEPHEN C JONES
JUDY METCALF  - RETAINED
EATON PEABODY
167 PARK ROW
PO BOX 9
BRUNSWICK ME 04011-0009

JODY C JONES  - DEFENDANT
918 TIRRILL FARMS
ST LOUIS MO 63124
Attorney for: JODY C JONES
JOHN CUNNINGHAM  - RETAINED 10/08/2019
EATON PEABODY
167 PARK ROW
PO BOX 9
BRUNSWICK ME 04011-0009

Attorney for: JODY C JONES
JUDY METCALF  - RETAINED
EATON PEABODY
167 PARK ROW
PO BOX 9
BRUNSWICK ME 04011-0009

SUPERIOR COURT
KENNEBEC, ss.
Docket No   AUGSC-RE-2019-00057

3/12/21

DOCKET RECORD

Skip for now